(931 P.2d 26)
No. 75,228

LARRY W. BURNEY, *Appellee*, v. KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellant*.

Opinion filed January 17, 1997.

*Matthew W. Boddington*, of Kansas Department of Social and Rehabilitation Services, of Topeka, for the appellant.

*Kirk D. Auston*, of Prairie Village, for the appellee.

Before MARQUARDT, P.J., LEWIS and GREEN, JJ.

LEWIS, J.: Larry W. Burney filed suit against the Kansas Department of Social and Rehabilitation Services (SRS) for negligence and malicious prosecution. The jury returned a verdict in favor of Burney in the amount of $18,250, as adjusted after application of comparative fault. SRS appeals from that verdict. We reverse.

Burney was employed as a substitute teacher at Washington High School in Kansas City. While conducting the sixth hour class at that school, Burney called J.S. to the front of the class to take attendance. While doing so, J.S. was seated beside Burney, behind the desk, in front of the classroom. J.S. maintained that while she was seated in this manner, Burney placed his left hand on her thigh. She says that she then moved her chair and that Burney again placed his hand on her thigh. At this point, J.S. was called out of the room.

J.S. reported the incident to the school counselor. Ultimately, the incident was reported to SRS, which assigned staff members to investigate it.

During the investigation by SRS, at least two other students in the classroom at the time were interviewed. These students verified portions of the story related by J.S.

The investigators also interviewed the director of personnel for Unified School District No. 500. This individual advised SRS that Burney had been previously suspended from substitute teaching at two other high schools due to inappropriate sexual activity with female students and staff. This information was verified by the SRS investigators.

After the interviews, SRS made a determination that Burney had, more likely than not, committed the acts alleged. The notice of this decision was mailed to the school, to Burney, and to the Kansas City Police Department.

Burney requested a review of the determination, and during that review, advised SRS that the allegations were untrue and that they must have been made to retaliate against him for a bad grade he had given one of the friends of J.S.

Pursuant to statutory directives, SRS made the results of its investigation known to the Kansas City Police Department. The Kansas City Police Department then assigned a detective to investigate the allegations. After the detective completed his investigation, he made a report to the Wyandotte County District Attorney's office. That office reviewed the report and made a decision to file criminal charges against Burney, charging him with aggravated sexual battery.

A preliminary hearing was conducted on the charges against Burney. The judge presiding over the preliminary hearing held that the evidence was sufficient to show probable cause that a crime had been committed and that Burney had committed the crime, and Burney was bound over for trial. In due time, the matter came on for trial, presided over by District Judge Bill D. Robinson, Jr.

Judge Robinson apparently reviewed the SRS file and asked if there were any more files relating to the case. This request resulted in the production of an SRS social services file concerning J.S. This

file had apparently not been uncovered during the investigation and had not been hitherto disclosed.

We have no idea as to what was in the social services file. It is not part of the record on appeal, and its contents were not revealed in any place in the record on appeal. However, apparently as a direct result of the production of this file, the Wyandotte County District Attorney's office dismissed the charges against Burney.

Burney then filed this lawsuit, accusing SRS of negligence in its investigation and of malicious prosecution. The focus of his claim apparently is the failure of SRS to discover or produce the social services file with the mysterious and unknown contents.

## EXISTENCE OF A DUTY

The first question as to the negligence claim against SRS is whether SRS owed a duty to Burney.

"Negligence consists of the following elements: *a duty owed to the plaintiff, breach of that duty*, that the breach of duty was the proximate cause of the plaintiff's injury, and that the plaintiff suffered damages. *Honeycutt v. City of Wichita*, 251 Kan. 451, 463, 836 P.2d 1128 (1992)." (Emphasis added.) *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 831, 877 P.2d 430 (1994). If there is no duty owed to the plaintiff, then there can be no breach of that duty and, hence, there can be no negligence for which a defendant may be held responsible.

The existence of a duty is a question of law. *Nero v. Kansas State University*, 253 Kan. 567, 571, 861 P.2d 768 (1993). Our scope of review on a question of law is unlimited. See *Dutta v. St. Francis Regional Med. Center, Inc.*, 254 Kan. 690, 693, 867 P.2d 1057 (1994). In order for SRS to have been liable for negligence, it must have owed a duty to Burney.

Burney points out that SRS did not raise this issue at trial. Ordinarily, issues not raised to the trial court cannot be raised on appeal. *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 827-28, 888 P.2d 832 (1995). However, as with most rules, there is an exception. We may address such issue where the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case. See *State v.*

*Bell*, 258 Kan. 123, 126, 899 P.2d 1000 (1995). In *Fudge v. City of Kansas City*, 239 Kan. 369, 372, 720 P.2d 1093 (1986), the Supreme Court dealt with such an issue and explained its decision to do so as follows:

> "In order for an individual to be liable for a negligent or wrongful act, there must be a duty to act. Appellants, relying upon the 'public duty doctrine,' argue the City of Kansas City and its police officers did not owe a duty of care to James Fudge. The public duty doctrine provides a governmental entity is not liable for torts committed against a person in absence of a special duty owed to the injured party. Under this doctrine, the police officers owed a duty to the public at large, rather than to any individual. *While this issue is raised for the first time on appeal, and thus may not ordinarily be considered (Lostutter v. Estate of Larkin*, 235 Kan. 154, 166, 679 P.2d 181 [1984]), *we hold that because it involves a legal issue arising from proven facts determinative of a significant issue in the case, it will be considered as an exception to the rule.* Wortman v. Sun Oil Co., 236 Kan. 266, 271, 690 P.2d 385 (1984); *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967)." (Emphasis added.)

We adopt the approach of *Fudge* and deal with the issue since we deem it to be determinative of this case.

The question is whether in the factual scenario in which this case arises SRS owed duties to the public at large or specifically to Burney. As we understand the law of this state, the duty of SRS in this case was owed to the public at large.

*P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, is controlling. In that case, SRS was alleged to have been negligent in investigating claims of child abuse at a day care center. As a result, the plaintiffs alleged that they and their children were abused and suffered damages. The trial court found that a duty was owed to the parents and to the children by SRS. The Supreme Court reversed, holding that in the context discussed, SRS owed no duty to the abused children but only to the public at large. Since the law is clear that SRS owes no duty to abused children, it surely owes no duty to an alleged abuser. Burney attempts to distinguish *P.W.*, but we see no distinguishing features and conclude that the reasoning in that case is compelling and controlling.

In *P.W.*, the Supreme Court discusses a variety of circumstances under which a duty may arise.

A duty may arise if there is a special relationship between the parties as required by Restatement (Second) of Torts § 315 (1964). Those relationships are said by the court to be that of common carriers and their passengers, innkeepers and their guests, parents and their children, masters and servants, the possessors of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another. 255 Kan. at 832.

The relationship in this case is that of a public agency and an alleged child abuser. That relationship does not fall within the ambit of those special relationships covered by Restatement (Second) of Torts §§ 314, 316, 319, and 320. We conclude there was no special relationship between Burney and SRS which gave rise to a duty owed to Burney by SRS.

Restatement (Second) of Torts § 324A would permit the finding of a duty if it were shown that SRS had undertaken, gratuitously or for a consideration, to render services to Burney or assume an obligation to do so. 255 Kan. at 833-34.

In the case at bar, the evidence shows that SRS undertook an investigation of Burney as an accused child abuser. This was an investigation required by SRS under the law. There is no evidence whatsoever that SRS performed any affirmative act to render services for Burney or entered into any agreement to do so. "Without an affirmative act or an agreement, there is no duty owed under § 324A." 255 Kan. at 834.

Finally, the court in *P.W.* held that SRS had no duty to specific abused children either under the doctrine of parens patriae or K.S.A. 38-1524. In this case, the doctrine of parens patriae is obviously not relevant. However, K.S.A. 38-1524 is. In explaining why there was no duty under that statute, the court in *P.W.* said:

"K.S.A. 38-1524, in part, provides that upon a report of abuse, SRS '*shall* make a preliminary inquiry to determine whether the interests of the child require further action to be taken. . . . *If reasonable grounds to believe abuse or neglect exist*, immediate steps *shall* be taken to protect the health and welfare of the abused or neglected child *as well as that of any other child under the same care who may be harmed by abuse or neglect.*' (Emphasis added).

"*This is a duty towards the public at large. Under the public duty doctrine, 'a governmental entity is not liable for torts committed against a person in absence*

*of a special duty owed to the injured party.' Fudge*, 239 Kan. at 372. A duty owed to the public may be narrowed into a special duty owed to an individual where the governmental entity has performed some affirmative act that causes injury or where it had made a specific promise or representation that under the circumstances creates a justifiable reliance on the part of the person injured. SRS neither acted affirmatively, caused the injury, or made any specific promise or representation to the plaintiffs which created any justifiable reliance. Under these circumstances, SRS's statutory duty was owed to the public at large and not specifically to the plaintiffs." 255 Kan. at 835-36.

If there is no duty to an abused child under 38-1524, there was no duty to Burney under the circumstances shown.

In *Beebe v. Fraktman*, 22 Kan. App. 2d 493, 921 P.2d 216 (1996), the facts indicated that SRS had been given several reports that A.R. was being abused. SRS either did not follow up on these reports or did so negligently, and the child was killed by the abuser. The mother of that child sued SRS on her own behalf and that of the child. We held that under *P.W.*, SRS had no duty to the child or to the mother and could not be held liable for the child's death.

The basic direction and authority for SRS to act in child abuse cases is K.S.A. 38-1524. That was the operative statute in *P.W.* and *Beebe*, and it was the operative statute under which the investigation was undertaken in this case. The law of Kansas is clear that in investigating and dealing with child abuse cases, SRS owes only a duty to the public at large and owes no specific duty to the injured child. In what we believe is a logical extension of that reasoning, we hold that in investigating child abuse cases, SRS owes no duty to the alleged abuser. It owed no duty to Burney in this case, and without a duty, it cannot be held liable for negligence.

Burney attempts to find a duty owed to him under certain sections of the Kansas Manual of Youth Services (KMYS). He also seizes upon certain mandatory terms used in K.S.A. 38-1523. This statute states in relevant part:

"(a) [SRS] and law enforcement officers shall have the duty to receive and investigate reports of child abuse or neglect for the purpose of determining whether the report is valid and whether action is required to protect the child from further abuse or neglect. If the department and such officers determine that no action is necessary to protect the child but that a criminal prosection should

be considered, the department and such law enforcement officers shall make a report of the case to the appropriate law enforcement agency.

"(b) When a report of child abuse or neglect indicates (1) that there is a serious physical injury to or serious deterioration or sexual abuse of the child and (2) that action may be required to protect the child, the investigation shall be conducted as a joint effort between [SRS] and the appropriate law enforcement agency or agencies, with a free exchange of information between them. If a statement of a suspect is obtained by the law enforcement agency, a copy of the statement shall be provided to [SRS] on request."

Section 1220 of the KMYS provides that preliminary risk assessment "[c]onsists of gathering sufficient information upon which to make an initial assessment of risk, service needs, eligibility. . . . Such reports . . . [r]equire a search of agency files to determine if there is an open or closed case for the child or family." Section 2210 of the KMYS provides: "After becoming familiar with the allegations of the report the worker shall . . . [r]eview information in closed/open agency cases regarding the child, parent, custodian or alleged perpetrator."

Burney's argument is based on the language in *P.W.*, which indicates that the use of mandatory terms such as shall, must, or will may create a special duty. The mandatory terms used in 38-1523 and KMYS §§ 1220 and 2210 must be read in context. These directives are used in connection with the performance by SRS of its *public duty* to investigate allegations of child abuse. The existence of those mandatory terms relied upon by defendant do not create or even imply that the duties outlined are owed to a child abuser or any other party. Plaintiff's argument is without merit.

We conclude that SRS owed no duty to Burney, and we reverse the negligence verdict in favor of Burney.

## TORT CLAIMS ACT

We also conclude that SRS was immune from liability in this case under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq*. The relevant sections of K.S.A. 75-6104 provide:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule, or regulation, ordinance or resolution;

"(d) adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured, except that the finder of fact may consider the failure to comply with any written personnel policy in determining the question of negligence;

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."

Burney claims that SRS was negligent in failing to follow certain mandatory provisions of the KMYS. It appears to us that in two or more instances SRS may have failed to follow its own rules by failing to review files and by failing to provide information in its possession to the Kansas City Police Department. At one time, Burney could have built a valid action against SRS on this basis. He no longer may do so.

The Kansas Supreme Court in *Fudge v. City of Kansas City*, 239 Kan. at 375, permitted the plaintiff to predicate liability on the city because the police department failed to follow a mandatory provision of its own handbook. *Fudge*, however, was apparently not a popular decision with the Kansas Legislature.

After the decision in *Fudge*, the Kansas Legislature amended 75-6104(d), which now reads as set forth above. As we said in *Beebe*: "The amendment [K.S.A. 75-6104(d)] was clearly intended to negate at least part of the holding of [*Fudge*]." 22 Kan. App. 2d at 497. K.S.A. 75-6104(d) as it now reads provides immunity to SRS from liability premised on the failure of its investigators to comply with the statutory provisions or the KMYS in question. SRS in this case is immune from liability for that failure. Pursuant to the same reasoning, SRS is immune from liability for its failure to provide to the Kansas City Police Department all of its files relating to J.S., under K.S.A. 75-6104(c) and (d).

The next claim of liability is based on the failure of SRS to conduct a proper investigation. We have held the decision as to whether to open a file for further investigation is a discretionary function. *Beebe*, 22 Kan. App. 2d at 496. We hold that the manner

of conducting an investigation into a charge of child abuse is also a discretionary function. SRS is granted immunity from liability in the performance of discretionary functions by the provisions of 75-6104(e). If there was any fault or negligence on the part of SRS in conducting the investigation into the allegations of child abuse in this case, no liability could be predicated on that fault under the aforementioned section of the Kansas Tort Claims Act.

In summary, we hold that under the Kansas Tort Claims Act, SRS was immune from liability for damages resulting from its negligence or its malicious prosecution of Burney.

## MALICIOUS PROSECUTION

The jury found that SRS acted with malice and was guilty of malicious prosecution. For a number of reasons, including our decision on the tort claims act as stated earlier, that verdict cannot stand and must be reversed.

In *Lindenman v. Umscheid*, 255 Kan. 610, Syl. ¶ 7, 875 P.2d 964 (1994), the Supreme Court indicated that malicious prosecution required the proof of five elements:

"The following elements are required to establish a malicious prosecution claim: (1) Defendant initiated, continued, or procured the proceeding of which complaint is made; (2) defendant in doing so acted without probable cause; (3) defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff sustained damages."

If SRS is immune from liability for the performance of any of the five elements required to prove malicious prosecution, then it cannot be held liable for that tort under the Kansas Tort Claims Act. The first element required to be shown is that SRS "initiated, continued, or procured the proceeding of which complaint is made."

In this case, SRS did not institute or sign the complaint; that was done by the district attorney's office. SRS did, however, under the requirement of law furnish information regarding its investigation to the district attorney's office. That information, along with the investigation by the Kansas City Police Department, presumably led to the filing of the charges against Burney.

K.S.A. 38-1523(b) requires that in the case of an allegation of sexual abuse, SRS "shall" conduct a joint investigation with the appropriate law enforcement agency and shall freely exchange information with it. An identical statement is found in the KMYS. The fact is, in making reports to the Kansas City Police Department, SRS was enforcing both the law and its own policy. K.S.A. 75-6104(c) and (d) provide immunity to SRS from liability for its actions in enforcing a law or regulation. SRS is immune from liability for its furnishing of information to the Kansas City Police Department or to the Wyandotte County District Attorney's office. The first element required in proving malicious prosecution cannot be a predicate for liability.

We further conclude there is insufficient evidence of malice in this case to sustain the verdict. We understand that proof of malice is a question of fact. We are also extremely reluctant to set aside the verdict of a jury. Despite our reluctance, we have no choice but to reverse this verdict because there is no evidence of malice to support it.

Malice has been defined as "evil-mindedness or specific intent to injure" or as a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse. *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986); PIK Civ. 2d 3.04. At the very best, the evidence in this case shows that SRS did what it was required by law to do—conduct an investigation on a report of child sexual abuse. The fact that it may not have conducted a perfect investigation cannot be equated with "evil-mindedness or specific intent to injure."

In *Clevenger v. Catholic Social Services of the Archdiocese of Kansas City*, 21 Kan. App. 2d 521, Syl. ¶ 3, 901 P.2d 529 (1995), we said: "It is the public policy of this state to encourage persons to report any information concerning possible child abuse to the proper authorities." While these remarks were not made with SRS in mind, we think them to be equally appropriate when we consider the obligation of that agency and what we ask it to do. It is surely the public policy of this state to encourage SRS and its agents to investigate reports of sexual child abuse. We went on to say in *Clevenger*: "We recognize the importance of the stated public pol-

icy concerning the required reporting of child sexual abuse. We consider it vital that we not create conditions which might chill the prompt reporting of incidents of abuse to the proper authorities." 21 Kan. App. 2d at 529.

It would be of little value to encourage reporting of incidents to SRS if the threat of lawsuits chills the ability of SRS to conduct an investigation into such incidents. We believe that it is equally important that we not create conditions which might chill the prompt investigation of incidents of abuse by SRS.

This case, along with *P.W.* and *Beebe*, show the conundrum in which SRS frequently finds itself. If it does not promptly and vigorously investigate claims of child abuse, it gets sued for its lack of aggressiveness and blamed for injury to the child. If it does aggressively investigate a claim of child abuse, it can be sued, as it was here, by the alleged abuser for its aggressiveness. We must balance the right to recover damages by an aggrieved citizen with the protection of our children from reported abuse. It would not serve the public good to subject SRS to lawsuits every time it does not conduct a perfect investigation. For that reason, SRS should not be guilty of malice unless there is strong convincing evidence of malice presented.

In *Clevenger*, 21 Kan. App. 2d 521, we adopted two rules which we believe are equally applicable to actions against SRS. Those rules are set forth at Syl. ¶¶ 4 and 5 of that opinion.

We hold that in an action for malicious prosecution based upon an alleged negligent investigation of a report of sexual abuse of a child, malice may not be shown by the mere fact that SRS investigators made such an investigation or by the fact that the individuals conducting the investigation were negligent in some aspect.

We also hold that in an action against SRS for malicious prosecution based upon an alleged wrongful investigation into a report of child abuse, a plaintiff must produce direct evidence of malice or prove facts which show that a defendant had a motive or reason for acting maliciously in investigating or reporting the alleged abuse.

We adopt those rules as applicable to cases for malicious prosecution against SRS. We have carefully reviewed the record in this

case, and we find that, at best, the evidence shows that SRS may have been negligent in conducting its investigation. We find no direct evidence of malice, nor can we find any reason to indicate that the SRS investigators had a reason or motive for acting maliciously.

This is a case where there was a claim of sexual abuse made by a young high school student. As a result of that claim, an investigation was conducted. That investigation revealed that Burney had a history of prior sexual misconduct and that the claim of J.S. was supported by some of her classmates. These facts alone justified and required that an investigation proceed and that the information obtained in that investigation be shared with the appropriate law enforcement agency. SRS did as the law required. The Kansas City Police Department conducted its own investigation and, after reviewing all of the information, the Wyandotte County District Attorney's office made a decision to prosecute. A trial judge presided over the preliminary hearing, found probable cause to believe the crime had been committed and that defendant had committed it, and bound defendant over for trial. There is abundant evidence in this record that SRS did nothing more than it was required by law to do, and there is no evidence to justify a finding that it acted with malice.

The issue raised as to the failure to give a jury instruction on immunity is moot and will not be discussed.

Reversed.