**Roderick I. FUGATE, Plaintiff,**

v.

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KS. et al., Defendants.**

**No. CIV. A. 01–2069–KHV.**

United States District Court,
D. Kansas.

Aug. 8, 2001.

Charles H. McKenzie, Accurso Law Firm, Kansas City, MO, for Plaintiff.

F. Charles Dunlay, IV, Unified Government Legal Dept., Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Roderick Fugate brings suit under 42 U.S.C. § 1983 against the Unified Government of Wyandotte County/Kansas City, Kansas, the Wyandotte County Sheriff's Department, the District Attorney's Office For the 29th Judicial District Of The State of Kansas, Cline Boone, Matthew Bock, Dennis Davis, Wyandotte County Adult Court Services and Robert Podebarach, alleging that they violated his right to be free from unlawful seizure under the Fourth and Fourteenth Amendments. Plaintiff also sues all defendants on state law claims of negligence, false arrest and false imprisonment. This matter comes before the Court on the Motion To Dismiss (Doc. # 18) which the Wyandotte County Sheriff's Department filed March 15, 2001, and the Motion To Dismiss Of Defendants Boone, Bock, Podebarach, Wyandotte County Adult Court Services, and The District Attorney's Office for The 29th Judicial District (Doc. # 21), also filed March 15, 2001.[1] For reasons set forth below, the Court finds that both motions should be sustained.

Motion To Dismiss Under Rule 12(b)(1)

The Court may exercise jurisdiction only when specifically authorized to do so, see *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir.1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)); see also Fed.R.Civ.P. 12(h)(3). The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. See *Basso*, 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. See *Jensen v. Johnson Co. Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993).

Motions To Dismiss Under Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume as true all well pleaded facts in plaintiff's complaint and view them in a light most favorable to plaintiff. See *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); see also *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The Court must make all reasonable inferences in favor of plaintiff. See *Zinermon*, 494 U.S. at 118, 110 S.Ct. 975; see also Fed. R.Civ.P. 8(a); *Lafoy v. HMO Colorado*, 988 F.2d 97, 98 (10th Cir.1993). The Court, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions. See *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The issue in reviewing the sufficiency of plaintiff's complaint is not whether he will prevail, but whether he is entitled to offer evidence to support his claims. See *id.* The Court may not dismiss a cause of action for failure to state a claim

---

1. The Unified Government of Wyandotte County/Kansas City, Kansas and Dennis Davis have not filed motions to dismiss.

unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his theory of recovery that would entitle him to relief. See *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir.1991). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See *Hall*, 935 F.2d at 1110.

### Facts

Robert Podebarach is an employee or officer of Wyandotte County Adult Court Services ("Court Services"). Cline Boone and Matthew Bock are attorneys who are licensed to practice law in the State of Kansas. At all relevant times they worked in the District Attorney's Office ("D.A.'s Office"). Dennis Davis is a supervisor in the Wyandotte County Sheriff's Department ("Sheriff's Department"). At all times alleged in the complaint, Podebarach, Davis, Boone and Bock were acting within the course and scope of their employment.

On May 24, 1999, Leroy K. Briggs committed felony crimes of burglary and criminal damage to property. Briggs possessed a fake Missouri driver's license in the name of "Rodrick Fugate," and the District Court of Wyandotte County, Kansas issued an arrest warrant for "Rodrick Fugate" which listed the information from that driver's license.[2] The Sheriff's Department then entered the arrest warrant into law enforcement computer systems. That same day, when law enforcement officers arrested him on the warrant, Briggs falsely identified himself as "Rodrick Fugate." The Sheriff's Department took photographs and fingerprints of Briggs. Unified Government and Sheriff's Department employees, including Davis, saw that Briggs had a tattoo of a bulldog on his

forearm and that he wore glasses. Seven weeks later, on July 12, 1999, officials released Briggs (whom they still knew as "Rodrick Fugate") on bond. Briggs later failed to appear for a hearing and on August 10, 1999, the District Court of Wyandotte County issued a bench warrant for him-still in the name of "Rodrick Fugate." Employees of the Sheriff's Department and/or the Unified Government again entered the warrant into the law enforcement computer systems.

At some point before February 10, 2000, employees of Court Services (including Podebarach), the D.A.'s Office (including Bock and Boone) and the Sheriff's Department learned that Briggs was using the false name of "Rodrick Fugate."

On February 10, 2000, police officers in Kansas City, Missouri arrested Roderick L. Fugate (hereinafter referred to as "plaintiff") on a traffic warrant issued by the Municipal Court Division of Kansas City, Missouri. Plaintiff paid a bond to be released, but officers then advised him of other warrants issued against him. These warrants were actually for traffic offenses that Briggs had committed while using the name "Rodrick Fugate." Plaintiff nonetheless posted bail for those warrants. Officers also advised plaintiff that the District Court of Wyandotte County had issued a felony warrant for his arrest, and they detained him in Jackson County, Missouri pending extradition to Kansas on that warrant. Plaintiff protested, claiming that he had not committed any felony offenses. On February 14, 2000, plaintiff appeared in the Circuit Court of Jackson County, Missouri and formally waived extradition to Kansas. That same day, law enforcement officers transported plaintiff to the Wyandotte County Detention Center on the felony warrant in the proceed-

---

**2.** The fake drivers license listed an address of 4037 Jackson, Kansas City, Missouri, a Social Security Number of 489–76–6780 and a birth date of July 25, 1975.

ing against Briggs. Plaintiff continued to protest that he had not committed any offenses and that they had detained the wrong person. The Sheriff's Department, however, did not investigate his claims of innocence.

Plaintiff asserts that defendants knew or with the exercise of reasonable care should have known that no warrant existed for his arrest. Plaintiff relies on the facts that (1) Briggs had been using the false name of "Rodrick Fugate," (2) the warrant named "Rodrick Fugate," not Roderick Fugate, (3) the warrant was for an individual with an operator's license, but plaintiff had a commercial driver's license, (4) the warrant listed a social security number and date of birth which were different from plaintiff's, (5) the warrant was for an individual with a bulldog tattoo, but plaintiff had no such tattoo and (6) Briggs' photograph and fingerprints did not match plaintiff's.

On February 15, 2000—the day after plaintiff was committed to the Wyandotte County Detention Center—an employee of the Unified Government or Sheriff's Department told plaintiff that he knew that plaintiff was not the "Rodrick Fugate" whom authorities were seeking. Defendants nonetheless kept plaintiff in custody until the following day, February 16, 2000.

Plaintiff asserts a cause of action under Section 1983, alleging that defendants violated his Fourth and Fourteenth Amendment rights to be secure in his person and to be protected from unreasonable seizure of his person. Plaintiff alleges that defendants acted pursuant to the custom and policy of the Sheriff's Department, the D.A.'s Office, Court Services and the Unified Government, and that all of these defendants knew or should have known that the alleged wrongs would be committed. Specifically, plaintiff alleges that defendants had a practice and custom of failing to rectify discrepancies between in-

formation entered into the computer, and information regarding the person arrested, and that this practice or custom was likely to lead to an unauthorized arrest. Plaintiff complains that defendants were deliberately indifferent to his rights. He alleges that defendants did not properly train or supervise officers and employees to review arrest warrants and verify identifying information before initiating arrests. Plaintiff also advances state law claims of negligence, false arrest and false imprisonment.

## Analysis

The Court first notes that plaintiff's complaint does not state whether he has sued the individual defendants in their official or personal capacities. Where the complaint does not clearly specify whether officials are sued personally or in their official capacities, or both, the Court must look to the course of proceeding to determine the nature of the liability sought to be imposed. See *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir.1991). In his response to defendants' motion, plaintiff states that he sues the individual defendants in both their official and individual capacities. Further, the individual defendants have also argued that they are entitled to qualified immunity, a right that only individual capacity defendants enjoy. See *Croft v. Harder*, 730 F.Supp. 342, 349 (D.Kan.1989). The Court thus construes this as an action against defendants in both their official and individual capacities.

## I. Capacity To Be Sued

Court Services, the Sheriff's Department, and the D.A.'s Office each contend that the Court lacks subject matter jurisdiction because they lack statutory capacity to sue or be sued.

■ Absent a specific statute, subordinate governmental agencies do not have the capacity to sue or be sued. See *Mason v. Twenty–Sixth Judicial Dist.*, 670 F.Supp. 1528, 1535 (D.Kan.1987); *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311, 317 (1985). In Hopkins v. State, the Kansas Supreme Court held that the district court had properly dismissed the Kansas Highway Patrol as a defendant, finding that it lacked the capacity to be sued. The Kansas Supreme Court cited K.S.A. §§ 75–6101 and 6102, which provide that each "governmental entity" is subject to liability for damages caused by the wrongful act or omission of any of its employees while acting within the scope of their employment. The statutes define a "governmental entity" as either a state or a municipality. A municipality is "any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution or other instrumentality thereof." K.S.A. § 75–6102(b). Section 75–6102(a), K.S.A., defines "state" as "the state of Kansas and any department or branch of state government or any agency, authority, institution or other instrumentality thereof." In Hopkinson v. State, the Kansas Supreme Court agreed with the trial court that the legislature may create a separate governmental entity with the capacity to sue and be sued, but that such authority must be expressly created—and it had not been so created in that case. See 237 Kan. at 606, 702 P.2d at 311 (citing *Murphy v. City .of Topeka–Shawnee*, 6 Kan.App.2d 488, 491, 630 P.2d 186 (1981)).

A. Court Services

■ Court Services contends that it lacks capacity to sue or be sued. The statutory authorization for Court Services is set forth in K.S.A. § 20–345. These statutes do not suggest that Court Services offices have the power to sue or be sued. Applying the reasoning set forth below, the Court finds that Court Services lacks the capacity to be sued and therefore must be dismissed from this lawsuit.

B. Sheriffs' Department

■ In *Wright v. Wyandotte Sheriff's Department*, 963 F.Supp. 1029, 1034 (D.Kan.1997), this Court specifically found that the Wyandotte County sheriff's department is an agency of Wyandotte County and thus is not capable of being sued. See also *Farris v. Board of County Commr's*, 924 F.Supp. 1041, 1045 (D.Kan. 1996); *Owens v. Rush*, 636 F.2d 283, 286 (10th Cir.1980). Plaintiff concedes this point but seeks dismissal without prejudice "to protect plaintiff's interests in the event that defendant Unified Government later denies that it is the proper party defendant with respect to the actions of the Sheriff's Department." Plaintiff's Response to Defendant Wyandotte County Sheriff's Department's Motion To Dismiss (Doc. # 29) filed April 6, 2001. As a matter of law the Unified Government of Wyandotte County/Kansas City, Kansas is responsible for actionable misconduct, if any, by the Sheriff's Department. The Court therefore denies plaintiff's request. The Sheriff's Department is not capable of being sued and the Court therefore sustains its motion to dismiss with prejudice.

C. D.A.'s Office

■ The D.A.'s Office points out that in Mason, relying on the lack of specific statutory language which granted either the judiciary or a Judicial District of Kansas the capacity to sue or be sued, this Court dismissed the Twenty Sixth Judicial District from a federal suit, See 670 F.Supp. at 1535. Applying Mason, this Court has also found that "Shawnee County Judges," and "Shawnee County Prosecuting Attorneys" are not recognized entities which are capable of suing or being sued. *Whayne v. State of Kansas*, 980 F.Supp. 387, 392

(D.Kan.1997) (citing, inter alia, *Lindenman v. Umscheid*, 255 Kan. 610, 628, 875 P.2d 964 (1994) ("Subordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued.")).

The D.A.'s Office points out that although Kansas statutes prescribe the powers and duties of district attorneys and govern their election, see K.S.A. § 22a–101 et seq., no statute specifically authorizes a district attorney's office to sue or be sued. Plaintiff acknowledges the cases which hold that absent specific statutory authority, subordinate government agencies do not have the capacity to sue or be sued. Relying on dicta in Lindenman, 255 Kan. at 629, 875 P.2d at 977,[3] however, plaintiff asserts that the authorization need not be express. In Lindenman, the Kansas Supreme Court stated that:

> the [Kansas Tort Claims Act] (KTCA) states that 'each governmental entity shall be liable for damages,' or in other words, has the capacity to be sued, for negligent or wrongful acts of its employees. K.S.A. 75–6103(a). The KTCA defines a governmental entity as a state or municipality. K.S.A.1993 Supp. 75–6102(c). Municipality is defined as a county or city and 'any agency, authority, institution or other instrumentality thereof.' K.S.A.1993 Supp. 75–6102(b).... The KTCA definition of governmental entity and municipality, although it includes county and city agencies, does not show legislative intent to imbue all local government agencies with the capacity to sue or be sued.

255 Kan. at 632, 875 P.2d at 978.

Plaintiff has not pointed to any statutory authority for the proposition that the legislature has bestowed upon the D.A.'s Office the right to sue or be sued. This Court thus adopts the reasoning of Whayne and Lindeman and finds that the D.A.'s Office is not an entity capable of being sued.

## II. 42 U.S.C. § 1983

### A. Prosecutorial Immunity

■ Boone and Bock assert that they are shielded from suit by absolute prosecutorial immunity. Prosecutors are entitled to absolute immunity for activities "intimately associated with the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The complaint specifically alleges that Boone and Bock had learned that Briggs had used the alias of "Rodrick Fugate." It generally alleges that "defendants" negligently caused an arrest warrant to improperly issue for "Rodrick Fugate" and negligently failed to verify that correct information was placed in the warrant and on the computer system.

Even assuming that plaintiff had alleged personal participation by Boone and Bock in obtaining a warrant, such activities are well within the absolute immunity afforded prosecutors. See *Burns v. Reed*, 500 U.S. 478, 479, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (absolute prosecutorial immunity applies to activities in initiating prosecution, including appearance in court to support search warrant application); *Spielman v. Hildebrand*, 873 F.2d 1377, 1382 (10th Cir.1989); *Dees v. Vendel*, 856 F.Supp. 1531, 1536 (D.Kan.1994). The complaint alleges that the acts of Boone and Bock "were investigative and not judicial, and were not within the traditional functions of an advocate." See Complaint ¶ 13. The complaint, however, specifically attributes only one act to these two defendants; it alleges that Bock learned that

---

3. Lindenman cited *Board of Public Utilities v. City of Kansas City*, 227 Kan. 194, 605 P.2d 151 (1980) (although the Board of Public Utilities is not given express statutory capacity to sue or be sued, "the power exists for the BPU to do so," because it has interest in property and must be able to vindicate that interest).

Briggs had used the false name of "Rodrick Fugate" and that he notified Boone of this fact. Even if the complaint implies that Boone and Bock filed the application for the arrest warrant for "Rodrick Fugate," such an action is clearly protected by absolute prosecutorial immunity.

Plaintiff relies upon *Van Deelen v. City of Eudora,* 53 F.Supp.2d 1223 (D.Kan. 1999), for the proposition that Boone and Bock are not entitled to absolute immunity because they acted in an investigatory or administrative function. In Van Deelen, this Court found that where a prosecutor signs a criminal complaint as the complainant under oath he is entitled to only qualified immunity. 53 F. Supp 2d at 1227 (citing *Kalina v. Fletcher,* 522 U.S. 118, 120, 130–131, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (when prosecutor personally attests to truth of statements in affidavit, she becomes complaining witness entitled only to qualified immunity)). By contrast, in this case plaintiff has not alleged that Boone or Bock signed the criminal complaint as witnesses. A prosecutor's exercise of professional judgment "in reviewing and evaluating the evidence, in deciding whether to initiate a prosecution, and in drafting the criminal charges" is integral to the initiation of a prosecution and thus entitled to absolute prosecutorial immunity. *Id.* at 1229–30, citing *Ireland v. Tunis,* 113 F.3d 1435, 1447 (6th Cir.1997) (absolute prosecutorial immunity attaches to administrative or investigative acts necessary for prosecutor to initiate or maintain criminal prosecution).[4] The complaint does not allege that Boone or Bock engaged in investigatory or administrative acts beyond those integral to determining whether to initiate a prosecution; thus, these two defendants are entitled to absolute prosecutorial immunity.

## B. Personal Participation

Podebarach contends that plaintiff has failed to allege that he personally participated in violating plaintiff's constitutional rights. To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, plaintiff must establish that defendant acted under color of state law and caused or contributed to the alleged violation. See *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996); *Snell v. Tunnell,* 920 F.2d 673, 700 (10th Cir.1990). Plaintiff must show that defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation. See *Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir.1996); *Wise v. Bravo,* 666 F.2d 1328, 1333 (10th Cir.1981).

The complaint alleges that someone notified Podebarach that Briggs was using the false name of "Rodrick Fugate." The complaint does not allege any other actions by Podebarach. Therefore, the Court finds that plaintiff has not alleged the personal participation required to set forth a constitutional claim against him.

## III. State Law Claims[5]

Plaintiff alleges that defendants negligently caused an arrest warrant for Ro-

---

4. Plaintiff also relies on *Houston v. Partee,* 978 F.2d 362 (7th Cir.1992), for the proposition that Boone and Bock are not entitled to prosecutorial immunity. In Houston, the Seventh Circuit held that prosecutors who failed to disclose exculpatory evidence after defendant's conviction were not entitled to absolute immunity. Houston is distinguishable because the prosecutors were not involved in the post-conviction proceedings when they engaged in the non-disclosure. Because they were not acting in a prosecutorial function at the time of the acts of which the plaintiff complained, they were entitled only to qualified immunity.

5. Defendants assert that this Court should not exercise pendant (supplemental) jurisdiction over the state law claims because defendants are entitled to Eleventh Amendment immuni-

derick Fugate to improperly issue and to be incorrectly entered into the law enforcement computer; transported him to and detained him in the Wyandotte County Detention Center on a search warrant which lacked probable cause; failed to act on information which exonerated plaintiff; and failed to investigate discrepancies in the available information regarding plaintiff and the information in the warrant and computer system. In his claim for false arrest and false imprisonment plaintiff repeats the allegations of the negligence claim and alleges that each act or failure to act "violated established procedures and policies adopted by defendants." See Complaint ¶¶ 49–54. Plaintiff further alleges that defendants unlawfully arrested, detained and falsely imprisoned him.[6]

In order to set forth a claim for negligence plaintiff must allege that: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) the breach proximately caused plaintiff's injury; and (4) plaintiff sustained damages as a result. See *Burney v. Kan. Dept. of SRS*, 23 Kan.App.2d 394, 397, 931 P.2d 26 (1997). False imprisonment or false arrest requires that plaintiff show that defendants "restrained his liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard." *Thompson v. Gen. Fin. Co., Inc.*, 205 Kan. 76, 88, 468 P.2d 269 (1970). One seeking to recover for false arrest must prove that he was unlawfully caused to be arrested by the defendant and, though it is not necessary that the arrest be directly ordered by the defendant, it must appear that the defendant either instigated it, assisted in it, or by some means directed or encouraged it. See *Thompson*, 205 Kan. at, 88, 468 P.2d at 280; *Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 494, 241 P.2d 1192 (1952).

### A. Public Duty Doctrine

Boone, Bock and Podebarach assert that the Court must dismiss plaintiff's state law claims because as a matter of law, they owed no duty to him. Defendants rely upon the "public duty doctrine" which establishes the general principle that a governmental agency owes duties to the public at large rather than to individuals. See *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 631, 938 P.2d 1293 (1997). No duty exists unless plaintiff establishes that the agency or its employee owed a special duty to the injured party,

ty. See *Oltremari v. Kan. Soc. & Rehab. Servs.*, 871 F.Supp. 1331, 1347 (D.Kan.1994) (district attorney is officer of state for purposes of Eleventh Amendment immunity); *McCormick v. Bd. of County Comm'rs*, 2001 WL 527502 (Kan.App. May 2, 2001) (same). This Court questions the rationale of the cases finding that district attorneys are state officers, however, particularly because they do not address the crucial issue of funding. Because the parties failed to provide adequate information or analysis concerning Eleventh Amendment immunity, the Court does not take it up at this time. In any event, the Court has found that the D.A.'s Office, the Court Services Office, and defendants Boone, Bock and Podebarach are entitled to dismissal of plaintiff's Section 1983 claim on other grounds. Because other defendants have not filed a motion to dismiss, however, some federal claims remain in the case. Therefore, the Court will exercise pendant jurisdiction over the state law claims against the individual defendants to avoid having plaintiff's claims go forward in two courts.

6. Under Kansas law, if plaintiff's arrest and imprisonment caused his injuries, his false arrest/false imprisonment claim might subsume his negligence claim. See *Brown v. State of Kan.*, 261 Kan. 6, 14–15, 927 P.2d 938, 943 (1996) (substance of claim for negligent arrest by law enforcement officers on out-of-date warrant is for wrongful arrest and imprisonment and thus subject to one-year statute of limitations). The parties, however, did not touch on this issue and the Court does not reach it at this point.

such as where a special relationship existed between the governmental agency and the wrongdoers, or between the agency and the injured person. See, e.g., *Cansler v. State*, 234 Kan. 554, 564–65, 675 P.2d 57 (1984) (correctional officials owed special duty to nearby residents to exercise reasonable care in maintaining prison security and issuing warnings when dangerous inmates escape); *C.J.W. v. State*, 253 Kan. 1, 12, 853 P.2d 4 (1993) (state had duty to warn of detained child's propensity toward violence and protect other children in custody from violent child). Defendants Boone, Bock and Podebarach point out that courts frequently have dismissed tort claims because the governmental entity owed plaintiff no special duty. See *P.W. v. Kansas Dep't. of SRS*, 255 Kan. 827, 833–34, 877 P.2d 430 (1994) (state regulatory agencies did not owe special duty to protect children in state-licensed daycare centers from abuse); *Burney v. Kansas Dep't. of SRS*, 23 Kan.App.2d 394, 931 P.2d 26 (1997) (no special duty toward man accused of child abuse to use due care in investigating child abuse allegations); *Beebe v. Fraktman*, 22 Kan.App.2d 493, 496, 921 P.2d 216 (1996) (no special duty to protect allegedly abused child from alleged abuser). They further note that the public duty doctrine applies to police functions. See *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982).

■ The Court acknowledges that absent some special relationship with—or breach of a specific duty owed to—an individual, liability will not arise for damages. See *Hendrix v. City of Topeka*, 231 Kan. 113, 120, 643 P.2d 129 (1982). Such a special relationship between law enforcement officers and individuals can arise in two circumstances. See *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 667 P.2d 380 (1983). The first of these is where a police officer affirmatively acts and the act causes injury. See *id.* at 1033, 667 P.2d 380. Examples of situations within this first category include officers placing an individual under arrest or officers committing an assault. See *id.* The second circumstance which creates a special duty is when an officer makes a promise or representation under circumstances creating justifiable reliance. See *id.*

Kansas law imposes on a police officer a duty to arrest an individual only under certain circumstances. See K.S.A. § 22–2401 (establishing circumstances under which officer may make arrest, including if he has a warrant or probable cause to believe warrant has issued). The complaint alleges only that these three defendants learned that Briggs had used the alias of "Rodrick Fugate," and did not correct the warrant to reflect his real name. A warrant issued in other than the true name of the intended target is valid so long as it otherwise contains an accurate description of the person to be arrested. See *West v. Cabell*, 153 U.S. 78, 85–86, 14 S.Ct. 752, 38 L.Ed. 643 (1894) (warrant must specifically name or identify person to be arrested); see also *Gero v. Henault*, 740 F.2d 78, 84–84 (1st Cir.1984). The Court doubts whether defendants owed a duty to plaintiff-once they learned that Briggs had used "Rodrick Fugate" as an alias-to ensure that the warrant was amended to reflect both Briggs' real name and his alias, and to further ensure that the new information was entered into the law enforcement computer. See *Brown v. Patterson*, 823 F.2d 167, 168 (7th Cir.1987) (not unreasonable to list only actual name on warrant and then also to list alias in data bank; law enforcement officers not liable for erroneously arresting individual whose name matched alias). Plaintiff might be able to set forth policies or procedures which required defendants to ensure that the warrant was amended and the computer information updated, and this might create such a duty. Because the Court finds that defendants Boone, Bock

and Podebarach are entitled to dismissal of the state law claims under the Kansas Tort Claims Act, however, the Court need not decide whether plaintiff can put forth facts on which a jury could determine that defendants owed plaintiff a duty.[7]

### B.   Kansas Tort Claims Act

██   Boone, Bock and Podebarach alternately assert that the Kansas Tort Claims Act, K.S.A. §§ 75–6101 to 75–6115, bars plaintiff's state law claims.   The KTCA is an "open-ended" act; liability is the rule while immunity is the exception; further, defendants bear the burden of establishing immunity under section 75–6104.   *Kan. State Bk. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587, 599–600 (1991).

Section 75–6104, K.S.A., provides in relevant part:

A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

.    .    .    .    .

(b) judicial function;

(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution;

.    .    .    .    .

(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved.

Boone, Bock and Podebarach assert that they are entitled to immunity under the "judicial function" exception of Section 75–6104(b).   Judicial power is the power to interpret and apply the laws in actual controversies.   Under the Kansas Tort Claims Act, "[j]udicial functions are determined by the intrinsic character of the duty or act itself, and not by the character of the official designated to perform it."   *Cook v. City of Topeka,* 232 Kan. 334, 336, 654 P.2d 953, 956 (1982).   The exercise of judicial power requires the exercise of judgment, discretion, discernment, or discrimination.   In order to qualify for the judicial function exception, defendants must show that their act or omission was judicial in nature.   Defendants cite no case law and provide no analysis in support of their claim to the judicial function exception, and the Court will not construct their argument for them.

Defendants also assert that they are entitled to immunity under the K.S.A. § 75–6104(c), which provides for immunity for enforcement of or failure to enforce a law.   In support, defendants cite *Burney v. Kan. Dep't of Soc. & Rehab. Serv.,* 23 Kan.App.2d 394, 401–403, 931 P.2d 26 (1997), in which the court found that SRS was entitled to immunity under Section 75–6104(c).   Defendants, however, fail to identify what law they enforced or failed to enforce.   Again, the Court will not construct their argument.

7.   Even if defendants Boone, Bock and Podebarach had a duty to amend the warrant to reflect that "Rodrick Fugate" was an alias for Leroy Briggs, or to ensure that this information was placed in the law enforcement computer, it is not clear whether plaintiff could prove any set of facts to support a finding that defendants' breach caused plaintiff's injury. See *Baker v. City of Garden City,* 240 Kan. 554, 557, 731 P.2d 278, 280 (1987) (breach of duty must be actual and proximate cause of injury; proximate cause is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act).   Defendants do not argue this point, however, and the Court does not address it.

Defendants also contend that they are immune from the state law claims under the discretionary function exception, K.S.A. § 75–6104(e). In a recent Kansas case, the court found that preparing and filing a criminal complaint falls within the discretionary function exception. See *McCormick v. Board of County Commissioners,* 2001 WL 527502 (Kan.App. May 2, 2001); K.S.A. 75–6104(e); see also *Atkins v. Lanning,* 556 F.2d 485, 488 (10th Cir. 1977) (function of preparing warrant quasijudicial; district attorney and staff who neglected to verify that indictment named proper person entitled to immunity for constitutional claim) see generally *Burns v. Reed,* 500 U.S. 478, 491, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (prosecutor entitled to immunity because issuance of warrant and appearing at probable cause hearing intimately associated with judicial phase of criminal process); cf. *Cook v. Topeka,* 232 Kan. 334, 654 P.2d 953 (1982) (court clerk's failure to record recall of bench warrant involved no discretion and was thus not judicial but ministerial act and not entitled to immunity under K.S.A. § 75–6104(b)). If the filing of a criminal complaint or indictment is an act entitled to immunity under the Kansas Torts Claims Act, it logically follows that the act of filing an application for an arrest warrant, and then failing to request that the warrant be amended, is also entitled to immunity. The Court therefore finds that defendants Boone and Bock and Podebarach are entitled to immunity under K.S.A. § 75–6104(e).

Should plaintiff during discovery find that individual defendants Boone, Bock and/or Podebarach engaged in acts beyond those alleged in the complaint, such that they are not entitled to immunity, he may ask for leave to file an amended complaint against them.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss (Doc. # 18) which the Wyandotte County Sheriff's Department filed on March 15, 2001, and the Motion To Dismiss Of Defendants Boone, Bock, Podebarach, Wyandotte County Adult Court Services, and The District Attorney's Office for The 29th Judicial District (Doc. # 21) filed March 15, 2001, be and hereby are **SUSTAINED.**