**Michael Rhodes HUNT,**
**Plaintiff-Appellant,**

v.

**Thomas A. BENNETT, Robert Settje, David G. Manter, Roy Olson, William P. Demoulin, William Sublette, individually and in their official capacities, Defendants-Appellees.**

**No. 93–1305.**

United States Court of Appeals,
Tenth Circuit.

Feb. 18, 1994.

Rehearing Denied March 22, 1994.

Michael Rhodes Hunt, pro se.

Before TACHA, BRORBY, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This is a pro se civil rights claim brought pursuant to 42 U.S.C. § 1983.[1] The Plaintiff–Appellant, Michael R. Hunt ("Hunt"), is a prisoner at Colorado's Limon Correctional Facility and appears in forma pauperis.[2] In this action for monetary damages, Hunt alleges that the named defendants violated his constitutional rights during the criminal investigation and trial that resulted in his conviction of several felony offenses. The defendants include Thomas A. Bennett ("Bennett"), a detective with the Arvada Police Department; Judges William P. Demoulin ("Demoulin") and Roy Olson ("Olson"), of the First Judicial District of Colorado; Robert Settje ("Settje"), the Deputy District Attorney for Jefferson County, Colorado; and David Manter ("Manter") and William Sublette ("Sublette"), of the Colorado State Public Defender's Office. The district court adopted the Magistrate Judge's recommendation and dismissed the action. We affirm, although for reasons other than those stated by the district court. *See Hernandez v. George,* 793 F.2d 264, 269 (10th Cir.1986) (appellate court may affirm district court on any ground supported by the record, even if not specifically relied on by the district court).

## I. Background

The Magistrate Judge appropriately construed this pro se litigant's complaint liberally. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Ruark v. Solano,* 928 F.2d 947, 949 (10th Cir.1991). The Magistrate Judge recommended the dismissal of Hunt's complaint against Bennett as barred by the applicable statute of limitations period. Next, the Magistrate Judge concluded that principles of absolute judicial immunity precluded Hunt's claims against Judge Demoulin and Judge Olson. Similarly, the Magistrate Judge reasoned that prosecutorial immunity shielded Settje from liability for alleged wrongdoing during the prosecution of Hunt. Finally, the Magistrate Judge determined that Manter and Sublette could not be liable under § 1983 because public defenders are not state actors. Before us is Hunt's timely appeal from the district court's adoption of the Magistrate Judge's recommendation and dismissal of Hunt's complaint.

"The sufficiency of a complaint is a question of law which we review *de novo.*" *Ayala v. Joy Mfg. Co.,* 877 F.2d 846, 847 (10th Cir.1989) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)). "Accordingly, we apply the same scrutiny to the complaint as did the trial court." *Id.*

## II. Time Bar

Hunt first appeals the court's determination that his § 1983 claim against Bennett was time barred. As the Supreme Court instructs, "§ 1983 claims are best characterized as personal injury actions" and we therefore apply the relevant state statute of limitations applicable to such actions. *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Consistent with this principle, the Magistrate Judge

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

2. We grant the Appellant's motion for leave to file a supplemental brief.

applied the two year statute of limitations provided in Colo.Rev.Stat. § 13–80–102. "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991) (quotations omitted). Because nearly three years had elapsed between Hunt's discovery in August 1990 of Bennett's alleged constitutional violations and Hunt's commencement of this action on June 29, 1993, the Magistrate Judge recommended the dismissal of Hunt's claim against Bennett.

■■■ Hunt does not challenge the Magistrate Judge's reliance upon Colo.Rev.Stat. § 13–80–102. Nor does he deny that he became aware of Bennett's alleged wrongdoing in August 1990. Instead, Hunt invokes the continuing violation doctrine, an equitable principle that we have applied in the context of Title VII claims, to link three alleged wrongful acts by Bennett from August 1990 to September 1991 as a single discriminatory enterprise.[3] *See, e.g., Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987). The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination. *Id.; See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1415 n. 6 (10th Cir.1993).

Hunt cites no case in which a court has extended the continuing violation doctrine to a § 1983 claim. Nevertheless, we have held that an allegation of a conspiracy constitutes a viable claim under § 1983, even if the alleged conspiracy began at a point that would be barred by the statute of limitations. *See Robinson v. Maruffi*, 895 F.2d 649, 654–655 (10th Cir.1990) (rejecting statute of limitations defense against § 1983 claim alleging conspiracy to cause malicious prosecution). In *Robinson*, we held that what matters for statute of limitations purposes is the date on which the conspiracy claim accrued, not the date that the defendants allegedly commenced their conspiracy. *Id.* Robinson alleged that the defendants conspired to engage in a malicious prosecution and we concluded that the claim did not accrue until the end of the second criminal trial. *Id.*

In contrast to the plaintiff in *Robinson*, however, Hunt fails to allege specific facts showing agreement and concerted action among Bennett and the other defendants. "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.1989).

Accordingly, we affirm the court's dismissal of Hunt's claim against Bennett.

### III. Judicial Immunity

■■■ We turn next to Hunt's allegations that Judges Demoulin and Olson violated Hunt's constitutional rights during the trial. As the Magistrate correctly stated, a state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."). Guided by *Sparkman*, we determine whether a judge performed a "judicial" act or acted "in the clear absence of jurisdiction" by looking to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362, 98 S.Ct. at 1107. Because Hunt alleges that Judges Demoulin and Olson engaged in unconstitutional conduct while presiding over Hunt's criminal trial, the judges were performing judicial acts and were therefore clothed with absolute judicial immunity.

---

3. Hunt points to the following three incidents in which Detective Bennett allegedly violated his constitutional rights: (1) in June 1990, Bennett conducted a criminal investigation of Hunt; (2) in August 1990, Bennett committed perjury during the preliminary hearing; and (3) in September 1991, Bennett delivered perjured testimony at trial.

Although Hunt correctly reads *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984), for the proposition that judicial immunity does not bar prospective injunctive relief against a judicial officer, he is not seeking such relief against Judges Demoulin and Olson. Nor is Hunt's reliance upon *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), relevant to his suit against Judges Demoulin and Olson because *Sparks* considered a judge's obligation to appear as a witness in third-party litigation. Indeed, *Sparks* reaffirmed that judges enjoy absolute immunity from liability under § 1983—even when the judge allegedly conspires with private parties. *Id.* at 28–32, 101 S.Ct. at 186–88.

Given the well-established principle of absolute judicial immunity, and Hunt's failure to demonstrate that Judges Demoulin and Olson acted in the clear absence of their jurisdiction, we affirm the court's dismissal of Hunt's complaint against Judges Demoulin and Olson.

## IV. Prosecutorial Immunity

■ The doctrine of absolute prosecutorial immunity similarly bars Hunt's damage claim against Settje. Just last term, the Supreme Court reaffirmed that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* —— U.S. ——, ——, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The Court in *Buckley* established a dichotomy between the prosecutor's role as advocate for the State, which demands absolute immunity, and the prosecutor's performance of investigative functions, which warrants only qualified immunity. *Id.* at ——, 113 S.Ct. at 2515–16. Insofar as Hunt's allegations of Settje's wrongdoing arise from Settje's preparation of, and performance during, Hunt's trial, *Buckley* dictates that Settje enjoys absolute prosecutorial immunity.

In an effort to overcome this barrier of prosecutorial immunity, Hunt contends that Settje forfeited his absolute immunity by allegedly conspiring with non-immune parties.

We are mindful of language in the opinions of our sister circuits suggesting such a rule. *See, e.g., San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 256 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). In *San Filippo,* the Second Circuit considered whether an immune party is stripped of immunity when the party conspires to present false testimony. However, we have expressly repudiated *San Filippo* and instead aligned ourselves with the Sixth and Seventh Circuits in preserving the immunity of a witness who allegedly conspired to commit perjury. *See Miller v. Glanz,* 948 F.2d 1562, 1570 (10th Cir.1991). Moreover, we need not reach Hunt's contention that a prosecutor who conspires with non-immune parties forfeits his immunity, given Hunt's failure to allege any facts that suggest that Settje conspired with other named defendants.

■ Finally, Hunt's discussion of *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), elides the difference between Eleventh Amendment immunity and personal immunity. *See Russ v. Uppah,* 972 F.2d 300, 302–303 (10th Cir.1992) (explaining the difference between these immunity doctrines). As we explained in *Russ,* the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state. *Id.* at 303. However, *Hafer* confirms that the Eleventh Amendment does not bar a suit seeking damages against state officials in their individual capacities. *Hafer,* —— U.S. at ——, 112 S.Ct. at 365. Although Settje therefore has no immunity from suit solely because of his status as a state prosecutor, he does have personal immunity under *Buckley* and *Imbler v. Pachtman,* 424 U.S. 409, 420–31, 96 S.Ct. 984, 990–94, 47 L.Ed.2d 128 (1976), for the initiation and pursuit of the criminal prosecution against Hunt.

We therefore affirm the court's dismissal of Hunt's complaint against Settje.

## V. Witness Immunity

■ Hunt next seeks damages against Detective Bennett for allegedly conspiring to

commit perjury during the preliminary hearing and at trial. In *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Supreme Court held that all witnesses enjoy absolute immunity from civil liability under § 1983 for their testimony in a prior trial. As explained above, we have extended *Briscoe* immunity to alleged conspiracies to commit perjury. *See Miller*, 948 F.2d at 1570 (employing functional approach to absolute immunity question and reasoning that principles underlying *Briscoe* immunity apply equally as forcefully to immunizing witnesses from liability for conspiracies to commit perjury). To be sure, nothing precludes a criminal suit against those who conspire to deliver perjured testimony, but Hunt's civil suit against Bennett is barred by *Miller*.

Accordingly, we affirm the court's dismissal of Hunt's claim against Bennett in his capacity as a witness at the preliminary hearing and trial.

## VI. Public Defenders Acting Under Color of State Law

■ We turn finally to Hunt's request for damages against his counsel, Manter and Sublette, of the Colorado State Public Defender's Office. In dismissing this claim, the Magistrate Judge relied on *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981), which held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Because Hunt alleges that Manter and Sublette engaged in a conspiracy with state actors, however, *Polk County* does not end our inquiry.

In *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984), the Supreme Court refined *Polk County* by holding that a public defender acts "under color of state law" when engaged in a conspiracy with state officials to deprive his client of constitutional rights. We recognize the inherent difficulty of producing direct evidence

of a conspiracy and therefore proceed with caution in considering the pre-trial dismissal of Hunt's complaint against Manter and Sublette. *See Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir.1980). At the same time, however, we have held that "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983). In fact, *Sooner Products* instructs that the pleadings "standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as are the state court judges" and prosecutors in the instant case. *Id.*

Here, neither the Magistrate Judge nor the district court considered Hunt's claim of conspiracy between Manter, Sublette, and the state actors also named as defendants in this suit. Nevertheless, our review of Hunt's pleadings reveals that, while he alleges specific actions relating to the adequacy of counsel at trial, he presents no facts establishing an agreement or meeting of the minds between Manter, Sublette, and the state actors.[4] *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230–31 (10th Cir.1990) (dismissing conspiracy claim because plaintiff offered no evidence of communication between alleged co-conspirators and nothing that would even give rise to the inference that they conspired).

Because Hunt's conclusory allegations of conspiracy between Manter, Sublette, and the state actors are unsupported by facts, Hunt has failed to demonstrate that Manter and Sublette acted "under color of state law." Accordingly, we affirm the dismissal of the § 1983 complaint against Manter and Sublette.

---

4. Hunt claims that Manter and Sublette: (1) waived Hunt's right to be fully advised of all alleged crimes; (2) tendered pleas on behalf of Hunt; (3) failed to investigate Hunt's defense; (4) deprived Hunt of his right to a speedy trial; (5) deprived Hunt of a fair trial; and (6) filed an incomplete record in preparation for Hunt's direct appeal.

## VII. Conclusion

The district court order dismissing Hunt's claim is therefore AFFIRMED.