**Eddie Dean WHITE, Plaintiff,**

v.

**State of OKLAHOMA, Ex Rel., TULSA COUNTY OFFICE OF DISTRICT ATTORNEY, et al. Defendants.**

No. 02–CV–158–EA(J).

United States District Court, N.D. Oklahoma.

Nov. 22, 2002.

James M Caputo, Tulsa, OK, for Eddie Dean White, plaintiff.

Linda Kay Greaves, District Attorney's Office, Tulsa, OK, for Tulsa County Dist. Attorney's Office, Tim Harris, defendants.

Andrew T Rees, Tulsa City Attorney, Tulsa, OK, for City of Tulsa, defendant.

## ORDER

EAGAN, District Judge.

This matter comes before the Court on the Report and Recommendation (Dkt.# 36) of the United States Magistrate Judge with respect to defendant City of Tulsa's Motion to Dismiss (Dkt.# 3) and defendant Tim Harris' ("Harris") Motions to Dismiss (Dkt.## 4, 11). Magistrate Judge Sam A. Joyner recommended that the Court grant the City of Tulsa's request for dismissal, and grant in part and deny in part Harris' request for dismissal. Harris filed a timely Objection (Dkt.# 37) pursuant to 28 U.S.C. § 636(b) and Fed. R.Civ.P. 72(b), and Eddie White ("White") filed an Objection (Dkt.# 38) and a Response to Harris' Objection (Dkt.# 39). Accordingly, the Court has conducted a *de novo* review.

## I.

White alleges civil rights violations under 42 U.S.C. § 1983 arising from his arrest on or about October 25, 2000, in Tulsa County, Oklahoma. White contends that he was falsely arrested after his name and physical description were transposed onto an arrest warrant to apprehend a suspect wanted for indecent exposure.

On August 22, 2000, Eddie M. Barnet ("Barnet") reported an indecent exposure incident to Tulsa Police Officer Odell ("Officer Odell") naming Edward Dean White as the perpetrator. Barnet knew the suspect's identity because she recognized the perpetrator as the son of her landlord,

Erma White. In her statement to police, Barnet described the suspect as a Negro male with a dark complexion, black hair and brown eyes, approximately six foot one inch in height, and 175 pounds in weight. Barnet also provided police with the suspect's address: 2247 N. Quincy Ave., Tulsa, Oklahoma.

Police Detective Greg Douglass ("Detective Douglass") interviewed Barnet on September 8, 2000, at which time Barnet relayed the information previously given to Officer Odell. On September 15, 2000, officers from the Tulsa Police Department prepared a Prosecution Report naming Edward Dean White as the suspect. The Prosecution Report did not contain any of the suspect's descriptive information.

White alleges that on September 15, 2000, Detective Douglass and an unnamed clerk for the police department prepared an affidavit for an arrest warrant for Edward Dean White. The affidavit described the suspect as a Black male, date of birth 6/22/60, social security number 448666637, residing at 2247 N. Quincy Ave., Tulsa, Oklahoma, 74110. However, the affidavit contained the birth date and social security number of Eddie Dean White, the plaintiff.

On October 12, 2000, the Honorable Peter Messler, District Court of Tulsa County, executed a Warrant of Arrest for "Eddie Dean White." The warrant described the suspect as an Indian male, five foot ten inches in height, 175 pounds, black hair, green eyes, date of birth 6/22/60, social security number 448666637, and home address of 2247 N. Quincy Ave., Tulsa, Oklahoma.

White alleges that employees of the District Attorney's office supplemented the arrest warrant information as follows: changing the suspect's first name from Edward to Eddie; adding an a.k.a. of Edward; changing suspect's height from 6′00″–6′01″ to 5′10″; changing eye color from brown to green; changing suspect's race from Negro to Indian; changing the zip code from 74110 to 74106; adding a driver's license number 06019096; adding a District Attorney's History Number 040279; and adding a Tulsa Police Identification Number P1686.

White was arrested for the crime of indecent exposure and peeping tom on October 25, 2000. White contends that Assistant District Attorney Ron Fraley announced at the preliminary hearing on April 27, 2001 that he had spoken with the victim, Barnet, who stated the perpetrator was a Black male. Barnet claimed she had never before seen the individual that the police arrested.

## II.

### A. Motion to Dismiss

A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Ramirez v. Department of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000). For purposes of making this determination, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. Ramirez, 222 F.3d at 1240. However, the Court need not accept as true those allegations that are conclusory in nature. Conclusory allegations state legal conclusions rather than factual assertions. Fugate v. Unified Gov't of Wyandotte County, 161 F.Supp.2d 1261, 1263 (D.Kan.2001) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

### B. Section 1983 Deprivation of Civil Rights

Section 1983 provides for civil liability for those who have deprived an individual of his constitutional rights:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (2002). To establish a claim under section 1983, a plaintiff must allege facts demonstrating two elements: First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Doyle v. Oklahoma Bar Assoc.,* 787 F.Supp. 189, 191 (W.D.Okla.1992).

### III.

#### A. *City of Tulsa's Motion to Dismiss*

█ Plaintiff alleges that the City of Tulsa is liable under section 1983 based on a custom or policy of deliberate indifference in training its employees to distinguish between races when preparing affidavits and warrants for arrest. A municipality, such as the City of Tulsa, is subject to liability only for official policies of customs that inflict an injury that the government as an entity is responsible for under section 1983. *See Brown v. Gray,*

227 F.3d 1278, 1290 (10th Cir.2000) (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Merely employing a tortfeasor does not subject a municipality to liability under section 1983 on a respondeat superior theory. *Id.*

█ Failure to train actions under section 1983 require a direct causal connection between the failure to train and the alleged constitutional violation. In *Brown,* the Tenth Circuit concluded that "[i]n order for liability to attach in a failure to train case, 'the identified deficiency in a city's training program must be closely related to the ultimate injury,' so that it 'actually caused' the constitutional violation." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citations omitted)). White must do more than merely identify the conduct properly attributable to the City of Tulsa. *See Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Rather, for the City of Tulsa to be liable under section 1983, the City of Tulsa itself must be a "moving force" behind the constitutional violation. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

White must further demonstrate the inadequate training evidenced a deliberate indifference on the part of the City of Tulsa. *See Brown,* 227 F.3d at 1291–92. In order to find deliberate indifference on the part of the City of Tulsa, White must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need." *Canton,* 489 U.S. at 390, 109 S.Ct. 1197.

█ White alleges that the City of Tulsa was negligent in the preparation of affida-

vits and warrants for arrest and that such negligence indicates a lack of proper training. White fails, however, to demonstrate a causal connection between the City of Tulsa's failure to train and the alleged violation of his constitutional rights. In order to be successful on his section 1983 claim, White must demonstrate that the City of Tulsa was a "moving force" behind the deprivation of his constitutional rights. *See Graham,* 473 U.S. at 166, 105 S.Ct. 3099. As noted by the Magistrate Judge, in merely alleging that one of the City of Tulsa's employees negligently transposed descriptive information about the suspect, White fails to allege that the City of Tulsa was a "moving force" behind the constitutional violation.

■ White also fails to allege that the inadequate training evidenced a deliberate indifference on the part of the City of Tulsa. White merely alleges that the City of Tulsa was negligent. Allowing White to establish municipal liability based upon a conclusory statement of negligence would violate the guidelines set forth by the Supreme Court in *Canton,* 489 U.S. at 391–92, 109 S.Ct. 1197 (noting that municipal liability based on statements that an employee's negligence automatically implies that a municipality acted with deliberate indifference is the imposition of a lesser standard of fault).

White's claim of deprivation of constitutional rights by the City of Tulsa fails because he has not alleged that the City of Tulsa was a "moving force" behind the constitutional violation, and he has not alleged that the inadequate training evidenced a deliberate indifference on the part of the City of Tulsa. Because White can prove no set of facts entitling him to relief, the City of Tulsa's Motion to Dismiss should be granted.

## IV.

### A. White's Section § 1983 Claim Against Harris in His Official Capacity

White alleges that the District Attorney's office is responsible for inaccurate suspect descriptive information that led to the deprivation of his constitutional rights. A suit against Harris in his official capacity as a state official is in actuality a suit against the State itself. *See Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Under the Eleventh Amendment, the State of Oklahoma is immune from suit in federal court, and therefore White's suit against Harris in his official capacity should be dismissed.

■ "[A] State is not a person within the meaning of [section] 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Although "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, ... it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66, 109 S.Ct. 2304. This immunity under the Eleventh Amendment remains in effect when state officials are sued for damages in their official capacity. *Graham,* 473 U.S. at 166, 105 S.Ct. 3099; *see also Garcia v. Board of Educ. of Socorro Consol. School Dist.,* 777 F.2d 1403 (10th Cir.1985).

The State of Oklahoma has not expressly waived its Eleventh Amendment immunity. *See Nichols v. Dep't of Corrections,* 631 P.2d 746, 750–51 (Okla.1981). Thus, the State of Oklahoma, and the state officials in their official capacities, are immune from suit in federal court. White filed suit against Harris in his official capacity as Tulsa County District Attorney. As this constitutes a suit against the State of Oklahoma, White is prohibited from bringing

such an action in federal court. Accordingly, Harris' motion to dismiss White's section 1983 claim against Harris in his official capacity should be granted.

## B. White's Section 1983 Claim Against Harris in His Individual Capacity

Harris contends that White's section 1983 claim against Harris in his individual capacity is barred by the doctrine of absolute prosecutorial immunity. The leading case in the area of prosecutorial immunity from suit under section 1983 is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler*, the Supreme Court stated that a prosecutor, acting within the scope of his duties in initiating and prosecuting a case, has the same absolute immunity from liability for damages under section 1983 for alleged violation of another's constitutional right that a prosecutor enjoys at common law. *Id.* at 418–19, 96 S.Ct. 984. "Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings for trial, and which occur in his role as an advocate for the State, are entitled to the protections of absolute immunity." *See Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir.1994) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

The Supreme Court has recognized a distinction between the prosecutor's role as State advocate and participation in investigatory functions. A prosecutor enjoys absolute immunity for prosecutorial functions, but may enjoy only qualified immunity for investigative actions. *Buckley*, 509 U.S. at 272, 113 S.Ct. 2606. In distinguishing between prosecutorial and investigatory actions, the Court examines the "nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (citing *Forrester v.*

*White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

White alleges that employees and officers of the District Attorney's office conducted an independent investigation. However, White does not provide factual assertions that Harris himself personally investigated or participated in investigatory actions in preparation of the warrant. Absent a factual assertion that Harris personally participated in the alleged violation, White's claim is limited to those activities that are traditionally held to be part of the prosecutorial function as State advocate. Harris is entitled to absolute immunity for his actions in the prosecutorial role, and accordingly White cannot state a section 1983 claim against Harris in his individual capacity. Harris' motion to dismiss as to White's section 1983 claim against Harris in his individual capacity is granted based on absolute immunity for prosecutorial functions.

## C. White's State Tort Claims Against Harris

Upon consideration of the report and recommendation of the Magistrate Judge, and a *de novo* review of such recommendation, this Court has found that all of the federal civil rights claims in White's action should be dismissed. No federal claims remain in White's action against defendants Harris and the City of Tulsa; thus the state tort claim of negligence against defendant Harris should be remanded to the state court.

## V.

Based upon a careful review of the Report and Recommendation of the Magistrate Judge, the Objection of the defendant Harris, the Objection of the plaintiff White, and plaintiff White's Response to Harris' Objection, the Court finds that the Report and Recommendation (Dkt.# 36)

should be and hereby is adopted. Defendant City of Tulsa's Motion to ·Dismiss (Dkt.# 3) is hereby **GRANTED**. Defendant Harris' Motions to Dismiss (Dkt.## 4,11) are hereby **GRANTED IN PART** and **DENIED IN PART**. The Objection of defendant Harris (Dkt.# 37), the Objection of plaintiff White (Dkt.# 38), and plaintiff White's Response to Harris' Objection (Dkt.# 39) are overruled.

**IT IS THEREFORE ORDERED** that all claims against defendant City of Tulsa are hereby dismissed; all federal claims against defendant Harris are hereby dismissed; and the state claims against Harris are hereby remanded to Tulsa County District Court.

## *REPORT AND RECOMMENDATION*

JOYNER, United States Magistrate Judge.

Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983. By minute order dated August 26, 2002, Defendants' Motions to Dismiss were referred to the undersigned United States Magistrate Judge. [Doc. Nos. 3–1, 4–1, 11–1].

Plaintiff contends that his constitutional rights were violated when he was arrested based upon an arrest warrant which erroneously identified Plaintiff and included Plaintiff's physical description. Plaintiff claims the erroneous arrest warrant resulted in Plaintiff's false arrest and imprisonment. Plaintiff seeks actual and punitive damages for the alleged denial of his constitutional rights.

The U.S. Magistrate Judge has reviewed the briefs filed by the parties and the relevant case law. The U.S. Magistrate Judge recommends that the District Court **GRANT** Defendant City of Tulsa's Motion to Dismiss [Doc. No. 3–1] and **GRANT IN PART AND DENY IN PART** Defendant

Tim Harris' Motions to Dismiss [Doc. No. 4–1, 11–1]. The U.S. Magistrate Judge additionally recommends that the remaining state law actions be **REMANDED** to state court.

## FACTUAL BACKGROUND [1]

Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 arising from his arrest on or about October 25, 2000, in Tulsa County, Oklahoma. Plaintiff contends that he was falsely arrested after his name and physical description were transposed onto an arrest warrant to apprehend a suspect wanted for indecent exposure.

On approximately August 22, 2000, Eddie M. Barnet ("Barnet") reported an indecent exposure incident to Tulsa Police Officer Odell ("Odell") naming Edward Dean White as the perpetrator. Barnet knew the suspect's identity because she recognized the perpetrator as the son of her landlord, Erma White. In her statement to police, Barnet described the suspect as approximately six foot one inch in height, 175 pounds, Negro male with a dark complexion, black hair, and brown eyes. Barnet also provided police with the suspect's address: 2247 N. Quincy Ave., Tulsa, Oklahoma.

Police Detective Greg Douglass ("Douglass") interviewed Barnet on September 8, 2000, at which time Barnet relayed the information previously given to Officer Odell. On September 15, 2000, officers from the Tulsa Police Department prepared a Prosecution Report naming Edward Dean White as the suspect. The Prosecution Report did not contain any of the suspect's descriptive information.

Plaintiff alleges that on September 15, 2000, Officer Douglass and an unnamed clerk for the police department prepared

---

1. The facts summarized in this section are taken from Plaintiff's pleadings. At this stage of the proceedings, no evidentiary materials are in the record.

an affidavit for arrest warrant for Edward Dean White. The affidavit described the suspect as a Black male, date of birth 6/22/60, social security number 448666637, residing at 2247 N. Quincy Ave., Tulsa, Oklahoma, 74110. However, the affidavit contained the birth date and social security number of Eddie Dean White, Plaintiff, an Indian male. In her interview statements, the victim had described the perpetrator as a Black male.

On October 12, 2000, the Honorable Peter Messler, District Court of Tulsa County ("Judge Messler"), executed a Warrant of Arrest for "Eddie Dean White." The warrant described the suspect as an Indian male, five foot ten inches in height, 175 pounds, black hair, green eyes, date of birth 6/22/60, social security number 448666637, and home address of 2247 N. Quincy Ave., Tulsa, Oklahoma.

Plaintiff alleges that employees of the District Attorney's office supplemented the arrest warrant information as follows: "changing the suspect's first name from Edward to Eddie; adding an A.K.A. of Edward; changing suspect's height from 6′00″–6′01″ to 5′10;″ changing eye color from brown to green; changing suspect's race from Negro to Indian; changing the zip code from 74110 to 74106; adding a driver's license number 06019096; adding a District Attorney's History Number 040279; and adding a Tulsa Police Identification Number P1686.

Plaintiff, Eddie Dean White, was arrested for the crime of Indecent Exposure and Peeping Tom on October 25, 2000. (CF–2000–5714). White posted $2,000.00 bond on October 26, 2000. Plaintiff contends that Assistant District Attorney Ron Fraley announced at the preliminary hearing on April 27, 2001 that he had spoken with the victim, Barnet, who stated the perpetrator was a Black male. Barnet claimed she had never before seen the individual that the police arrested (Plaintiff in the present action).

## STANDARD OF REVIEW

### A. MOTION TO DISMISS

In a ruling on a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court will assume as true all well-pleaded facts in Plaintiff's complaint, view them in a light most favorable to Plaintiff, and make all reasonable inferences in favor of Plaintiff. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). However, the Court need not accept as true those allegations that are conclusory in nature. Conclusory allegations state legal conclusions rather than factual assertions. *Fugate v. Unified Gov't of Wyandotte County,* 161 F.Supp.2d 1261, 1263 (D.Kan.2001) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)).

### B. 42 U.S.C. § 1983 DEPRIVATION OF CIVIL RIGHTS

To establish a claim under 42 U.S.C. § 1983, Plaintiff must allege facts demonstrating two elements: (1) Plaintiff must prove that Defendant has deprived him of a constitutional right; and (2) Plaintiff must show that Defendant deprived him of his constitutional right under color of state law. *See Doyle v. Oklahoma Bar Assoc.,* 787 F.Supp. 189, 191 (W.D.Okla.1992). The only constitutional right applicable under the facts of this case is Plaintiff's right to be free from unreasonable seizure secured by the Fourth Amendment and incorporated against the states through the Fourteenth Amendment of the United States Constitution. Plaintiff must, therefore, demonstrate that his alleged false arrest and imprisonment implicate a right to be free from unreasonable seizure pro-

tected by the Fourth and Fourteenth Amendments.

## I. DEFENDANT TIM HARRIS, TULSA COUNTY DISTRICT ATTORNEY, MOTION TO DISMISS

### A. DEFENDANT TIM HARRIS IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY FROM PLAINTIFF'S 42 U.S.C. § 1983 CLAIM.

The doctrine of absolute prosecutorial immunity bars Plaintiff's claim against Tulsa County District Attorney Tim Harris ("Harris"). As long as an official's actions are within the scope of his immunity, "absolute immunity defeats a suit at the outset." *Imbler v. Pachtman*, 424 U.S. 409, 419, n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings for trial, and which occur in his role as an advocate for the State, are entitled to the protections of absolute immunity." *See Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir.1994) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

The Supreme Court has established a dichotomy distinguishing between a prosecutor's role as State advocate and a prosecutor's participation in investigatory functions. Prosecutorial functions demand absolute immunity, whereas investigative actions afford only qualified immunity. *Buckley*, 509 U.S. at 272, 113 S.Ct. 2606. Absolute immunity for prosecutorial functions reflects the common law concern that

> harassment by unfounded litigation would cause deflection of the prosecutor's energies from his public duties, and the possibility that [the prosecutor] would shade his decisions instead of ex-

ercising the independence of judgment required by his public trust.

*Imbler*, 424 U.S. at 423, 96 S.Ct. 984.

In analyzing prosecutorial versus investigatory actions, the Court examines the "nature of the function performed, not the identity of the actor who performed it." *See Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (citing *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). In *Kalina*, the Court held that activities in connection with two of three charging documents, the information and the motion for an arrest warrant, were protected by absolute immunity. *Id.* at 129, 118 S.Ct. 502. The third document, a certification for probable cause, was not covered by absolute immunity where the prosecutor acted as a complaining witness. Thus, the prosecutor exceeded the scope of her prosecutorial functions and was entitled to only qualified immunity. *Id.*

In order to prevail on a claim for damages under § 1983, Plaintiff must show that Harris *personally* participated in the alleged violation. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir.1996). Plaintiff generally alleges that "employees and/or officers of the office of the District Attorney conducted an independent investigation," which led to the supplementation of the warrant prepared for arrest. Conclusory allegations are insufficient to support a constitutional violation. *Id.* Plaintiff provides no factual assertions that Harris himself investigated or participated in investigatory actions in preparation of the warrant. In fact, Plaintiff alleges that the error in arrest warrant information occurred at the police department level. Furthermore, Plaintiff has not alleged that Harris himself personally attested to the truth of statements in the affidavit for the arrest warrant, as compared to the prosecutor in *Kalina*, so as to become a com-

plaining witness and lose the protection of absolute immunity. *See Kalina,* 522 U.S. at 122, 118 S.Ct. 502. As alleged by Plaintiff, Harris' actions fall within the scope of his prosecutorial duties.

Plaintiff's Complaint wavers between allegations that the District Attorney's office negligently transposed descriptive information on one hand, and that an independent investigation must have occurred to provide supplemental descriptive information on the other hand. *See* Complaint ¶¶ 40, 41. Plaintiff asserts that both employees of the Tulsa Police Department and the District Attorney's office are responsible for inaccurate suspect descriptive information. The fact that the suspect's descriptors were supplemented at some point with information such as a District Attorney's History number and Tulsa Police Identification number, does not necessarily indicate independent investigation on the part of the District Attorney's office, much less Harris. The change in descriptive information may have occurred based on the confusion in names (changing "Edward" to "Eddie" and listing "Edward" as an alias). Regardless of the events that transpired, Harris himself was not the affiant in preparation of the arrest warrant and did not exceed his prosecutorial role.

Because Plaintiff fails to allege that Harris engaged in investigatory actions beyond those integral to determining whether to initiate a prosecution, a function intimately associated with the judicial process, Harris is entitled to absolute immunity. *See Fugate,* 161 F.Supp.2d at 1268. The U.S. Magistrate Judge recommends that the District Court **GRANT** Harris' motion to dismiss Plaintiff's § 1983 claim against him based on absolute immunity for prosecutorial functions.

**B. DEFENDANT TIM HARRIS IS IMMUNE FROM PLAINTIFF'S § 1983 SUIT FOR DAMAGES IN HIS OFFICIAL CAPACITY BASED ON THE ELEVENTH AMENDMENT.**

Defendant asserts that a suit against him for damages in his official capacity as a state official is no more than a suit against the State itself and must be dismissed. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Under the Eleventh Amendment, the State of Oklahoma is immune from suit in federal court, and therefore the lawsuit against Defendant in his official capacity should be dismissed.

"[A] State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, although "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, ... it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66, 109 S.Ct. 2304. Moreover, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted). *See also Eastwood v. Dep't of Corrections of State of Okla.,* 846 F.2d 627 (10th Cir.1988) (suit against the Department of Corrections barred by the Eleventh Amendment which prohibits suits in federal court against a state by its own citizens or by citizens of another state).

The State of Oklahoma has not expressly waived its Eleventh Amendment immunity. *See Nichols v. Dep't of Corrections,* 631 P.2d 746, 750–51 (Okla.1981). Therefore, the State is immune from suit by the Plaintiff in federal court. Plaintiff has

sued Harris in his official capacity as Tulsa County District Attorney. To the extent that a suit against Harris in his official capacity constitutes a suit against the State, Plaintiff is prohibited from bringing such an action in federal court. *Will,* 491 U.S. at 64, 109 S.Ct. 2304 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). The U.S. Magistrate Judge recommends that the District Court **DISMISS** all claims against Defendant Harris for acts in his official capacity.

**C. DEFENDANT TIM HARRIS IS IMMUNE FROM PLAINTIFF'S § 1983 SUIT FOR DAMAGES IN HIS INDIVIDUAL CAPACITY BASED ON ABSOLUTE PROSECUTORIAL IMMUNITY.**

Plaintiff asserts that naming Defendant Tim Harris in Plaintiff's First Amended Complaint and seeking punitive damages is sufficient to bring a cause of action against Harris in his individual capacity. In his individual capacity, Harris is a person who may be sued under 42 U.S.C. § 1983 for his actions under the color of law. However, where Harris' actions under color of law are prosecutorial in nature, he maintains the protection of absolute prosecutorial immunity. *See Coburn v. Nordeen,* 206 F.Supp.2d 1119, 1122 (D.Kan. 2002). "So long [as a] prosecutor is performing functions 'associated with the judicial phase of the criminal process,' he or she is protected from suits for civil damages." *Id.* (citations omitted); *see also Doyle v. Oklahoma Bar Assoc.,* 787 F.Supp. 189, 192 (W.D.Okla.1992). For the reasons discussed above, the U.S. Magistrate Judge recommends that the District Court **DISMISS** these claims against Defendant Harris based on absolute prosecutorial immunity in his individual capacity.

**D. PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT HARRIS UNDER 42 U.S.C. § 1983 BECAUSE NEGLIGENCE IS NOT EQUIVALENT TO A CONSTITUTIONAL TORT.**

Defendant argues that Plaintiff's claim of negligence on the part of Harris is insufficient to state a claim under 42 U.S.C. § 1983, which requires the violation of a constitutional right. Plaintiff counters that Defendant's acts constituted more than mere negligence.

Mere negligence does not rise to the level of a constitutional tort required under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In order to satisfy his prima facie case for a § 1983 violation, Plaintiff must show not only that his constitutional rights were violated under color of state law, but also that *Defendant Harris* subjected or caused Plaintiff to be subjected to a deprivation of his constitutional rights. *See* 42 U.S.C. § 1983. Plaintiff's allegations against Harris are conclusory and not well-pleaded.

In "Count III, Title 42 § 1983 Deprivation of Rights" of Plaintiff's First Amended Complaint, Plaintiff reasserts his prior allegations. Plaintiff titles Count II "Negligence." Plaintiff asserts that Harris is responsible for the training of, as well as the "negligent" acts of, his employees. (¶ 39). Moreover, Plaintiff contends that employees of the District Attorney's Office "transposed" certain descriptive information. (¶ 40). Plaintiff claims an unnamed employee of the District Attorney's Office was "negligent, plainly incompetent or in knowing violation of the law . . . ." (¶ 45). Plaintiff also submits that the "Tulsa County District Attorney's Office was deliberately and indifferently negligent, plainly incompetent or in knowing violation of the law . . . ." (¶ 47).

Plaintiff's allegations of fact simply do not support an inference that Harris personally acted in a deliberate or intentional manner to deprive Plaintiff of his constitutional rights. Plaintiff contends that Defendant's actions were more than mere negligence because an employee or officer of the District Attorney's Office conducted an independent investigation to supplement the preparation of the arrest warrant. Plaintiff maintains that the very act of supplementing the arrest warrant's descriptive information implies that the information was not inadvertently transposed. Plaintiff seeks discovery to ascertain the identity of the employee who supplemented the descriptive information. However, this conclusory allegation does not implicate Defendant Harris on simply anything more than negligence. Because negligence is not equivalent to a constitutional tort as required in a § 1983 claim, the U.S. Magistrate Judge recommends that the District Court **GRANT** Defendant's Motion to Dismiss for failure to state a claim against Defendant Harris pursuant to Fed. R.Civ.P. 12(b)(6).

### E. Qualified Immunity Issue Moot Since Protected By Absolute Immunity.

Because the U.S. Magistrate Judge recommends the District Court grant Defendant's motion to dismiss based on the defense of absolute immunity and Plaintiff's failure to allege more than negligence, the Magistrate Judge declines, at this time, to address the issue of qualified immunity.

### F. Plaintiff's State Tort Claim Of Negligence Against Defendant Harris In His Official Capacity Should Be Remanded To State Court.

#### 1. State Tort Claim of Negligence

The Eleventh Amendment prevents a state from being sued in federal court without its consent. However, a state may be sued in state court under certain circumstances set forth in The Governmental Tort Claims Act (hereafter "GTCA"). No federal civil rights claims remain in Plaintiff's action against Defendants Harris and the City of Tulsa; thus, the U.S. Magistrate Judge recommends that District Court **REMAND** the state tort claim of negligence to the state court. However, because of the nature of the Report and Recommendation, the U.S. Magistrate Judge has briefly examined the state tort issues, as discussed below.

Defendant Harris is entitled to absolute immunity from Plaintiff's state tort negligence claim against him because his actions fall within the scope of his prosecutorial duties. Moreover, a suit against a state official in his official capacity is a suit against the state itself and should be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The state of Oklahoma has expressly adopted the doctrine of sovereign immunity in 51 Okla. Stat. § 152.1 of the GTCA. The GTCA provides, in part: "The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." *Id.* Similarly, "[t]he state or a political subdivision shall not be liable if a loss or claim results from ... prosecutorial functions ...." *See* 51 Okla. Stat. § 155; *see also Powell v. Seay*, 560 P.2d 555 (1976) (granting immunity for acts committed by the prosecutor that are an intrinsic part of the prosecutorial function).

For the reasons discussed above, Harris' conduct did not exceed the scope of his prosecutorial functions. The preparation of an arrest warrant based on police affidavits is intricately connected to a prosecutor's role as advocate for the state.

Therefore, Harris is entitled to absolute prosecutorial immunity for Plaintiff's state tort claim of negligence against him in his official capacity. Moreover, a suit against Harris in his official capacity is a suit against the state itself, which is immune from liability for claims arising out of an official's prosecutorial actions. Furthermore, 51 Okla. Stat. § 153 evidences the Oklahoma State Legislature's intent that the GTCA be the exclusive remedy in stating, "[t]he liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."

## 2. Liability Insurance

Plaintiff asserts that an insurance policy covering the state, a political subdivision, or its employees constitutes a waiver of immunity under the Governmental Tort Claims Act, citing 51 Okla. Stat. § 158(B). Thus, Plaintiff submits that he is entitled to conduct discovery into whether the Tulsa County District Attorney's Office or Tim Harris maintain liability insurance coverage. The liability insurance exception provides in relevant part:

If a policy or contract of liability insurance covering the state or political subdivision or its employees is applicable, the terms of the policy govern the rights and obligations of the state or political subdivision and the insurer with respect to the investigation, settlement, payment and defense of claims or suits against the state or political subdivision or its employees covered by the policy.

51 Okla. Stat. § 158(B).

Plaintiff failed to allege the existence of liability insurance in his First Amended Complaint, raising the issue for the first time in Plaintiff's Response to Defendant Harris' Motion to Dismiss. However, in the event the District Court declines to remand the action, or if, after remand, the

state court grants Plaintiff leave to amend his Complaint, the U.S. Magistrate Judge will briefly examine the liability insurance issue in this Report and Recommendation.

Plaintiff cites *Lemons v. Shipman*, 541 P.2d 280 (Okl.Civ.App.1975), for his proposition that the existence of liability insurance waives sovereign immunity to the extent of the coverage. *Lemons* involved a personal injury action against the board of county commissioners and the driver of a county truck which struck the plaintiff's automobile. *Id.* The *Lemons* Court stated in a footnote:

The Oklahoma Legislature, by the adoption of 47 O.S.1971 § 158.1, has to a limited extent removed the defense of governmental immunity traditionally recognized in this state. The new law permits suits against the state where a state-owned vehicle causes damages. However, this non-immunity to suit is specifically limited to the amount of insurance coverage on the vehicle.

*Id.* at 281, n. 1. In his dissent, Justice Brightmire opined that where the record fails to disclose the existence of liability insurance, the case should proceed as if insurance existed "with any eventual recovery circumscribed by the policy limits." *Id.* at 282.

Similarly, the Oklahoma Supreme Court in *Brewer v. Indep. Sch. Dist. # 1*, 848 P.2d 566 (Ok.1993), construed a liability insurance policy as a waiver of sovereign immunity to the extent of the policy's coverage under 51 Okla. Stat. § 158(B). *Brewer* involved an attractive nuisance suit on behalf of a child injured on a school playground slide. In its motion for summary judgment, the school district denied negligence and invoked four exemptions under 51 Okla. Stat. § 155 (the same provision exempting prosecutorial functions). The Court held that "securing liability insurance is not an absolute waiver of gov-

ernmental immunity, but is a waiver of governmental immunity to the extent of the insurance coverage only." *Id.* at 569.

The Court concluded that the exemptions under § 155 are not necessarily waived by obtaining insurance. Rather, "immunity is only waived to the extent of the coverage." *Id.* The Court stated that "extent of coverage" refers not only to the dollar amount under the insurance policy, but also to the risks insured against in the policy. Therefore, "the language of the policy becomes important to define the extent of coverage which directly affects ... immunity." *Id.*

The U.S. Magistrate Judge recommends that the District Court REMAND Defendant Harris' Motion to Dismiss Plaintiff's state tort negligence claim against him in his *official capacity as an officer of the state.* The Magistrate Judge notes that a suit against a state official for actions within the scope of employment is an action against the state itself. Similarly, the state is immune from liability under the GTCA for losses arising from prosecutorial functions. Although Plaintiff never alleges liability insurance in his Complaint, if the state court elects to grant leave to amend, the U.S. Magistrate Judge recommends allowing limited discovery to ascertain the existence of a liability insurance policy and its coverage terms specific to Defendant Harris.[2]

---

**2.** Some courts have concluded that what Plaintiff characterizes as an affirmative defense actually "defeats a suit at the outset." Assuming absolute prosecutorial immunity as more than just an affirmative defense, it falls outside the scope of the GCTA § 158(B) "defense of claims." In comparing the procedural differences between absolute and qualified immunity, the *Imbler* Court noted that so long as an official's actions are within the scope of his immunity, "absolute immunity *defeats a suit at the outset."* *Imbler v. Pachtman,* 424 U.S. 409, 419, n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (emphasis added). By contrast,

**G. DEFENDANT HARRIS' MOTION TO DISMISS PLAINTIFF'S STATE TORT NEGLIGENCE CLAIM AGAINST HIM IN HIS INDIVIDUAL CAPACITY SHOULD BE REMANDED TO STATE COURT.**

As stated, no federal civil rights issues remain in Plaintiff's action against Defendant Harris. The U.S. Magistrate Judge recommends that the District Court **REMAND** to the state court the only remaining issue against Defendant Harris, Plaintiff's state tort negligence claim against Harris in his individual capacity. *See* 28 U.S.C. § 1441(c).

## II. *DEFENDANT CITY OF TULSA, MOTION TO DISMISS*

Plaintiff asserts that the City of Tulsa is liable under 42 U.S.C. § 1983 based on a custom or policy of deliberate indifference in training its employees to distinguish between races when preparing affidavits and warrants for arrest. The Supreme Court has held that "a municipality cannot be liable under Section 1983 on a respondeat superior theory for merely employing a tortfeasor." *See Brown v. Gray,* 227 F.3d 1278, 1290 (10th Cir.2000) (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Municipalities are subject to liability only for official policies or customs that, upon execution, inflict

---

"[t]he fate of an official with qualified immunity depends on the circumstances and motivations of his actions, as established by the evidence at trial." *Id.* Therefore, arguably the Oklahoma State Legislature did not intend to waive absolute prosecutorial immunity by the language of 51 Okla. Stat. § 158(B), as it is much more significant than just any affirmative defense. Conversely, the cases of *Lemons* and *Brewer* involved exemptions contained within 51 Okla. Stat. § 155, which also encompasses immunity for prosecutorial functions.

injury such that the government as an entity is responsible under § 1983. *Id.*

Failure to train actions under 42 U.S.C. § 1983 require a direct causal connection between the failure to train and the alleged constitutional violation. The *Brown* Court concluded that "[i]n order for liability to attach in a failure to train case, 'the identified deficiency in a city's training program must be closely related to the ultimate injury,' so that it 'actually caused' the constitutional violation." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citations omitted)). It is insufficient for a Plaintiff to merely identify conduct properly attributable to the City. *See Bd. of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Rather, for a governmental entity to be liable under § 1983, the entity itself must be a "moving force" behind the constitutional violation. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Plaintiff must further demonstrate the inadequate training evidenced a deliberate indifference on the part of the City of Tulsa. *See Brown v. Gray,* 227 F.3d 1278 (10th Cir.2000) (citing *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197). A finding of deliberate indifference on the part of the City,

> [R]equires a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need."

*Brown,* 227 F.3d at 1288–89. The touchstones of inadequate training include the risk that inadequate training poses, and whether the City is aware of that risk. *Id.*

The Supreme Court held in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), that adopting:

> [L]esser standards of fault and causation would open municipalities to unprecedented liability under § 1983 . . . . Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities-a result . . . rejected in *Monell* . . . . It would also engage the federal courts in an endless exercise of second-guessing municipal employee training programs . . . an exercise . . . the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism.

*City of Canton,* 489 U.S. at 391–92, 109 S.Ct. 1197 (citations omitted).

Plaintiff cites *Allen v. Muskogee,* 119 F.3d 837 (10th Cir.1997), for his proposition that showing a pattern of constitutional violations is not necessary to put the City on notice; but rather, a single violation will suffice. The *Allen* Court noted that "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Id.* at 842. Plaintiff alleges failure on the part of the City of Tulsa to adequately train its employees in preparing affidavits and arrest warrants such that an individual of a different race will be falsely arrested. As evidence of inadequate training, Plaintiff cites case number CJ–2000–5921, in which a Caucasian female was arrested when the actual suspect was a Black female.

The line of cases upon which Plaintiff relies to support his contention that an allegation of inadequate training combined with evidence of a single violation can trigger municipal liability involve use of force/excessive force situations. In fact,

the *Allen* Court incorporates its single violation rule under the auspices of a failure to train in the use of force analysis.[3] The failure to train in use of force situations is certainly distinct from failure to train in the preparation of affidavits and warrants for arrest.[4] The undersigned does not find sufficient reason to depart from the general rule requiring a direct causal link between the City's custom or policy, and that the custom or policy must evidence a deliberate indifference on the part of the City.

Plaintiff alleges negligence on the part of the City of Tulsa in the preparation of affidavits and warrants for arrest and maintains that such negligence indicates a lack of training. However, Plaintiff fails to show any direct causal connection between the City's failure to train and the alleged violation of his constitutional rights. As discussed, it is insufficient for a Plaintiff to merely identify conduct that is properly attributable to the City. *See Bd. of County Commissioners of Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382. Rather, for a governmental entity to be liable under § 1983, the City itself must be a "moving force" behind the constitutional violation. *See Graham*, 473 U.S. at 166, 105 S.Ct. 3099. In merely asserting that one of the City's employees "negligently" transposed descriptive information about the suspect, Plaintiff fails to assert that the City of Tulsa was a "moving force" behind the constitutional violation.

Plaintiff also fails to allege that inadequate training evidenced a deliberate indifference on the part of the City of Tulsa. Deliberate indifference requires a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need." *See Brown*, 227 F.3d at 1288–89. In light of the Supreme Court's rationale in *City of Canton*, allowing Plaintiff to establish municipal liability based on conclusory statements that an employee's negligence automatically implies that the City acted with deliberate indifference would in essence impose a lesser standard of fault. This would result in *"de facto respondeat superior* liability on municipalities" and "engage the federal courts in an endless exercise of second-guessing municipal employee training programs ... an exercise ... the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *See City of Canton*, 489 U.S. at 391–92, 109 S.Ct. 1197 (citations omitted).

Therefore, pursuant to Fed.R.Civ.P. 12(b)(6), the U.S. Magistrate Judge recommends that the District Court **GRANT** Defendant City of Tulsa's Motion to Dismiss for failure to state a claim upon which relief can be granted.

---

3. The Court's analysis is as follows: "To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers *in the use of force*, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and inadequate training." *Allen*, 119 F.3d at 841 (citations omitted) (emphasis added). Significantly, the single violation language refers to the second and third requirements in the failure to train in use of force analysis. *Id.* at 842.

4. The *Allen* Court noted that "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights". *Allen*, 119 F.3d at 842.

## RECOMMENDATION

For the reasons discussed above, the U.S. Magistrate Judge recommends that the District Court **GRANT** Defendant City of Tulsa's Motion to Dismiss [Doc. No. 3–1] and **GRANT IN PART AND DENY IN PART** Defendant Tim Harris' Motions to Dismiss [Doc. No. 4–1, 11–1]. The U.S. Magistrate Judge additionally recommends that the District Court REMAND the remaining state law issues to the state court.

## OBJECTIONS

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); and *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).